[Civ. No. 8743.   Third Dist.   May 17, 1956.]

BEVERLY JEAN DuBOIS, Respondent, v. JOHN JAY DuBOIS et al., Defendants; ELLA M. SHAW, as Administratrix With the Will Annexed, etc., Appellant.

Jeremy C. Cook for Appellant.

Philander Brooks Beadle and Morton L. Silvers for Respondent.

VAN DYKE, P. J.—This action was begun as a divorce action brought by Beverly Jean DuBois, respondent here, against her husband John.   The complaint filed charged cruelty as

ground for divorce, sought custody of the minor children of the parties, a distribution of the community property and provisions for alimony and child support. The cause came on for trial on May 28, 1953. During the trial proceedings that day certain matters developed in the testimony concerning alleged claims made by Jennie V. Starr to property of the marital community, and the matter was continued to afford opportunity to join Mrs. Starr as a third party. It appeared that on May 20th after the cause was at issue but before the first day of trial, an action had been begun by Mrs. Starr against John wherein the complaint sought judgment against him based upon allegations that promissory notes, aggregating in principal sum $31,500, had been executed in favor of, and were held by, Mrs. Starr, and were due and unpaid. The trial court made an order authorizing the joinder of Mrs. Starr in the case, and on July 1st, following, an amended complaint was filed, making her a party. Therein it was alleged that the action she had brought against John had resulted in a default judgment of something over $40,000 and that execution had been issued thereon. It was further alleged, however, that on June 13th Mrs. Starr had assigned the judgment to W. Coburn and Jeremy C. Cook by a "purported assignment." The cause against Mrs. Starr was stated as follows: There were allegations that Beverly and John were possessed of community property, the full extent of which Beverly did not know; that included therein was the family home, a house and lot in Turlock; that John had been employed since March of 1946 by Mrs. Starr as manager of her nursery in Turlock; that between November 1, 1946 and June 1, 1949, he had executed nine unsecured promissory notes to Mrs. Starr aggregating $31,500 in principal amounts; that there was no consideration for any of said nine notes and that the same were not obligations of John. It was alleged that the attorney representing Mrs. Starr in said action she brought against John was W. Coburn Cook and that he was an associate and partner of H. E. Gleason, who was the attorney for John. It was alleged also that the action had been fraudulently and collusively conceived and maintained for the purpose of depriving Beverly of her just share in the community property of the parties. When trial of the divorce action was resumed after Mrs. Starr had answered the pleading against her, testimony was taken concerning the community property of the parties, the claims of Mrs. Starr thereto, the good faith of the suit on the notes, and related

matters. A judgment was rendered affecting the interests of Mrs. Starr and deciding the issues raised against her. Also an interlocutory decree of divorce was granted to Beverly, she was given custody of the children and granted alimony and child support; the community property was apportioned. John appealed from the judgment against him, but his appeal has been dismissed for want of prosecution thereof. Mrs. Starr appealed. While the appeal was pending she died and there has been substituted her personal representative.

The theory upon which respondent sought to obtain the order of the court permitting the joinder of Mrs. Starr was this: She contended that the promissory notes executed to Mrs. Starr by John had been executed not at the times they bore date, but after respondent had begun the divorce action; that the execution of the notes, the delivery of the notes to Mrs. Starr, the filing of the action by Mrs. Starr, the entry of the default of John, the obtaining of the judgment and the issuance of the execution thereon were all mere steps taken to carry out a collusive and fraudulent scheme to impress a judgment lien upon the family home and to obtain levy upon whatever personal property the marital community might possess subject to execution, to sell the property so seized, and thus take it out of the reach of the court in the divorce action to the detriment of respondent.

Appellant contends that the joinder of Mrs. Starr was unauthorized; that the complaint making her a party did not state a cause of action against her in that it did not show that she claimed any interest in the community property. We think we need not consider these contentions because an examination of the record discloses, as argued by appellant, that the judgment of the court, insofar as it affected the interests of Mrs. Starr, must be reversed for want of evidence.

The trial court granted respondent a personal judgment against Mrs. Starr in the sum of $1,275, being one-half of a total sum of $2,550, which the court found was community property in the hands of Mrs. Starr by reason of her having withheld portions of the salary of John. John was given a like judgment against Mrs. Starr, the court having divided between him and Beverly the total amount which Mrs. Starr was found to owe to the community. The finding that Mrs. Starr had withheld sums aggregating $2,550 from John's salary is without support in the evidence. The period during which the withholding was declared to have been made extended from January 1, 1953, to the date of the judgment

and was at the rate of $350 per month, the court declaring that, although during the period John was paid $400 a month, his salary was in fact $750 a month. The testimony addressed to this matter was as follows: John testified that beginning January 1, 1953, a salary which had been $750 had been reduced to $400 a month. Jeremy C. Cook, an attorney at law, who was one of the trustees of a trust into which on June 13, 1953, Mrs. Starr had transferred all of her property of whatever kind and who was the manager of that trust, testified that from the time the trust was made and he took over the management of the trust property John's salary had been $400 per month paid to him for operating a nursery formerly owned by Mrs. Starr and placed by her in the trust. This testimony was corroborated by that of the bookkeeper who kept the books for the nursery business. There is nothing in the testimony that is contradictory to the above. The court may have disbelieved the witnesses, but disbelief furnishes no foundation for an affirmative finding to the contrary.

The trial court found and adjudged that the promissory notes sued on by Mrs. Starr had been executed without consideration after the divorce action had been begun and that the execution of the notes, the action upon them, the default and the judgment were all collusively fraudulent acts on the part of John and Mrs. Starr, done for the purpose of defrauding respondent. The court decreed that the judgment obtained by Mrs. Starr was void. The record presents this situation: The complaint, as against Mrs. Starr, contained an allegation that having fraudulently procured the judgment against John, Mrs. Starr had "purportedly" assigned the same to W. Coburn Cook and Jeremy C. Cook. There was introduced in evidence on behalf of Mrs. Starr the conveyance in trust made by her, which conveyed to W. Coburn Cook and Jeremy C. Cook, as trustees, all of Mrs. Starr's property. Briefly it was shown that she had made this disposition because, by reason of advanced age, she was no longer able or desirous of caring for her property. The trust indenture gave to her a right to receive during her lifetime the net income derived from the trust properties and made other dispositions to take effect upon her death. The conveyance was final, no right of revocation having been reserved. There is nothing in the evidence which attacks the good faith of this transfer in trust, and so upon this record it was shown that, whatever may have been the derivation of the judgment Mrs. Starr obtained against John, the ownership thereof had passed to others not parties

to the cause before Mrs. Starr had been joined in the divorce action. It was not competent, therefore, for the court to make any adjudication as to the validity of the judgment.

For the reasons given, the judgment rendered against Mrs. Starr is reversed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied June 13, 1956, and respondent's petition for a hearing by the Supreme Court was denied July 11, 1956. Gibson, C. J., and Spence, J., were of the opinion that the petition should be granted.